# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| ASHELEY CRAWFORD, | ) |
| | ) |
|     Plaintiff, | ) |
| v. | )   CIVIL ACTION NO. 1:10-00256-KD-B |
| | ) |
| DOLGEN CORP. INC., | ) |
| d/b/a DOLLAR GENERAL, | ) |
| | ) |
|     Defendant. | ) |

## ORDER

This matter is before the Court on the defendant's Motion for Summary Judgment and supporting documents (Docs. 40, 41, 42), the plaintiff's Response and supporting documents (Docs. 46, 47), and the defendant's Reply (Doc. 50) and Motion to Strike (Doc. 51). For the reasons set forth herein, the Court finds that the defendant's Motion for Summary Judgment (Doc. 40) is due to be **DENIED**, and the defendant's Motion to Strike (Doc. 51) is due to be **DENIED** in part and found **MOOT** in part.

**I.    Background**

On May 19, 2010, Plaintiff Asheley Crawford ("Plaintiff") initiated this action for alleged discriminatory termination based on her pregnancy by Defendant Dolgen Corp. Inc. d/b/a Dollar General ("Defendant"), in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* (Docs. 1, 17). The Court has jurisdiction in this case pursuant to 28 U.S.C. § 1331. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission and filed her complaint within 90 days of receiving a "Right to Sue" letter. (Doc. 17 at 1; Doc. 46-9 at 2-4). Defendant has moved for summary judgment on Plaintiff's claim. (Doc. 40).

## II.     Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (Dec. 2010). The recently amended Rule 56(c) governs procedures and provides as follows:

>   *(1) Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
>   **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
>   **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
>   *(2) Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
>   *(3) Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.
>
>   *(4) Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c) (Dec. 2010).

Defendant, as the party seeking summary judgment, bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991) (quoting Celotex Corp. v.

Catrett, 477 U.S. 317, 323 (1986)). If the nonmoving party fails to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof, the moving party is entitled to summary judgment. Celotex, 477 U.S. at 323. In reviewing whether the nonmoving party has met her burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992), cert. denied, 507 U.S. 911 (1993) (internal citations and quotations omitted). The mere existence of a factual dispute will not automatically necessitate denial; rather, only factual disputes that are material preclude entry of summary judgment. Lofton v. Sec'y of Dep't of Children & Family Servs., 358 F.3d 804, 809 (11th Cir. 2004), cert. denied, 534 U.S. 1081 (2005).

## III.   Facts[1]

In January 2008, Plaintiff was hired by Defendant as a stocker/cashier at its Dollar General retail store in Monroeville, Alabama ("the Store"). (Doc. 41 at 2; Doc. 41-1 at 4). Plaintiff was eventually promoted to lead sales associate, a position which included such additional responsibilities as opening and closing the store. (Doc. 41-1 at 19-20). These duties entailed following set procedures, for which Plaintiff was trained by a store manager. (Id. at 20, 35-37; Doc. 46-1 at 12-15).

Plaintiff learned that she was pregnant in October 2008 and told at least two co-workers. (Doc. 41 at 9; Doc. 46-1 at 16, 18). Some time later, while working at the Store, Plaintiff experienced cramps and bleeding. (Doc. 46-1 at 28). She informed the Store's manager, Barbie,

---

[1] The Court has made its determination of facts by "review[ing] the record, and all its inferences, in the light most favorable to [Plaintiff,] the nonmoving party." Benson v. Tocco, Inc., 113 F.3d 1203, 1207 (11th Cir. 1997).

3

who called the office of Dr. Angela Powell, an OB/GYN at the local hospital. (Id. at 9, 28-29). The father of Plaintiff's baby, Betts, then drove Plaintiff to the hospital. (Id. at 10, 30). Dr. Powell advised Plaintiff to take a week off from work and provided her with a doctor's note, which Betts took to the Store that same night, though it is not known to whom he gave it. (Id. at 9-10). Plaintiff did not return to work before taking the week off. (Id.).

During the week Plaintiff was off, Tara Pugh ("Pugh") took Barbie's place as manager of the Store. (Doc. 46-1 at 6). Around that time, Donna Rivers ("Rivers"), another Store employee, discussed Plaintiff with Pugh as follows:

> [Pugh] told me that she didn't think it was going to work that Ms. Crawford was pregnant and a third key holder. She said that she couldn't have her go out on maternity leave. I told her to just go ahead and train someone else and have them ready to take Ms. Crawford's place. She said that she didn't want to do that, and that she was going to have to get rid of Ms. Crawford. She asked me if I wanted the job. I told her that I didn't and that it was wrong for her to fire Ms. Crawford because she was pregnant.

(Doc. 46-4 at 2).[2]

Plaintiff returned to work on April 9, 2009, and was responsible for closing the Store that night. (Doc. 41-1 at 15-16; Doc. 46-1 at 31-32). Rivers closed up the store with her. (Id. at 32). Pugh claims that the following morning, when she arrived to open the Store, she found the door unlocked and the Store's safe open. (Doc. 41-2 at 2, 18). Pugh viewed footage of the previous night from the Store's security cameras and claims that it showed Plaintiff leave the Store without closing the safe. (Id.). As the person in charge of closing the Store on April 9, Plaintiff

---

[2] Section B of Defendant's motion to strike (Doc. 51 at 4-6), pertaining to certain portions of Rivers' affidavit (Doc. 46-4), is **DENIED** as to the portion quoted. The remainder of Defendant's motion to strike (Doc. 51) is **MOOT**, as the Court has not relied on any of this evidence in reaching its decision.

4

was responsible for making sure that the safe and the door were both locked before leaving for the night. (Doc. 46-3 at 13-14).

Pugh notified Ronald Poindexter ("Poindexter"), the district manager in charge of the Store, of the situation. (Id. at 14; Doc. 46-2 at 5). Poindexter, in turn, contacted Trent Telford, the regional loss prevention manager, who told him that the incident constituted a severe failure to protect company assets. (Doc. 46-2 at 14). Poindexter had Plaintiff suspended while he conducted an investigation, which included reviews of the security video, the police report of the incident, and statements given by Pugh and Rebecca Harrison, another Store employee who had been present with Pugh the morning of the incident. (Id. at 14-19). Poindexter agreed with Pugh's assessment of the incident; he and Pugh then jointly made the decision to terminate Plaintiff. (Id. at 16-19; Doc. 41 at 5; Doc. 41-2 at 10). This decision was made sometime after April 15, 2009, the day Poindexter reviewed the security video. (Doc. 41-3 at 10, 17).

A copy of the security video allegedly showing Plaintiff's violations of company procedures was not retained by Defendant. (Doc. 41-3 at 11-12). Plaintiff disputes that she left the safe open and the door unlocked the night of April 9, 2009. (Doc. 46-1 at 32-33). In addition, Rebecca Harrison, who had initially corroborated Pugh's version of the following morning's events, now disputes it, asserting that the door was locked and the safe was closed when they arrived to open the Store. (Doc. 45-3 at 23-24; Doc. 46-6 at 2).

## IV. Analysis

Disparate treatment, or intentional discrimination, under Title VII occurs when an "'employer simply treats some people less favorably than others because of their race, color, religion, sex, or national origin.'" Armstrong v. Flowers Hosp., 33 F.3d 1308, 1313 (11th Cir. Ala. 1994) (quoting Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 335-36 n.15 (1977)).

The Pregnancy Discrimination Act of 1978 amended Title VII to make unlawful the act of discharging an employee "because of or on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k). "This act declared that women affected by pregnancy 'shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work . . . '" Spivey v. Beverly Enters., Inc., 196 F.3d 1309, 1312 (11th Cir. 1999) (citing 42 U.S.C. § 2000e(k)). Moreover, "[t]he Pregnancy Discrimination Act [] made clear that, for all Title VII purposes, discrimination based on a woman's pregnancy is, on its face, discrimination because of her sex." Int'l Union, United Auto., Aerospace and Agr. Implement Workers of Am., UAW v. Johnson Controls, Inc., 499 U.S. 187, 198-199 (1991) (citation omitted). Therefore, "[t]he analysis required for a pregnancy discrimination claim is the same type of analysis used in other Title VII sex discrimination suits." Armindo v. Padlocker, Inc., 209 F.3d 1319, 1320 (11th Cir. 2000). Plaintiff alleges that she was terminated solely on the basis of her pregnancy and related medical condition in violation of Title VII. (Doc. 17).

For intentional discrimination claims, "'[p]roof of discriminatory motive is critical[.]'" Armstrong, 33 F.3d at 1313 (quoting Int'l Bhd. of Teamsters, 431 U.S. at 335-36 n.15). A plaintiff may prove a claim of intentional discrimination through direct evidence, circumstantial evidence, or through statistical proof. See, e.g., Burke-Fowler v. Orange County, Fla., 447 F.3d 1319, 1322-1323 (11th Cir. 2006); Earley v. Champion Int'l Corp., 907 F.2d 1077, 1081 (11th Cir. 1990). The Eleventh Circuit "defines direct evidence of discrimination as evidence which reflects a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1086 (11th Cir. 2004) (internal quotation marks omitted) (quoting Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1357 (11th Cir. 1999) and Carter v. Three Springs Residential Treatment, 132

6

F.3d 635, 641 (11th Cir. 1998)). The Eleventh Circuit's "precedent illustrates [that] only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor, constitute direct evidence of discrimination." Wilson, 376 F.3d at 1086 (internal quotation marks omitted) (quoting Rojas v. Florida, 285 F.3d 1339, 1342 n.2 (11th Cir. 2002) and Carter v. City of Miami, 870 F.2d 578, 582 (11th Cir. 1989)). That is, "[i]f the alleged statement suggests, but does not prove, a discriminatory motive, then it is circumstantial evidence." Id. (citing Burrell v. Bd. of Trs. of Ga. Military Coll., 125 F.3d 1390, 1393 (11th Cir. 1997) (rejecting contention that a statement that "allows an inference of discrimination, but [also permitted a] factfinder [to] infer reasonably that the statement was nothing more than an observation of a fact" constituted direct evidence). However, "[w]here the non-movant presents direct evidence that, if believed by the jury, would be sufficient to win at trial, summary judgment is not appropriate even where the movant presents conflicting evidence." Merritt v. Dillard Paper Co., 120 F.3d 1181, 1189 (11th Cir. 1997) (quoting Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996)). The Eleventh Circuit has further

> defined direct evidence as "evidence, which if believed, proves existence of fact in issue without inference or presumption." Rollins v. TechSouth, Inc., 833 F.2d 1525, 1528 n. 6 (11th Cir. 1987) (citation, emphasis and brackets omitted). Evidence that only suggests discrimination, see Earley v. Champion Intern. Corp., 907 F.2d 1077, 1081-82 (11th Cir. 1990), or that is subject to more than one interpretation, see Harris v. Shelby County Bd. of Educ., 99 F.3d 1078, 1083 n. 2 (11th Cir.1996), does not constitute direct evidence. In a long line of cases, this Court has found direct evidence where "actions or statements of an employer reflect[ ] a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee." Caban-Wheeler v. Elsea, 904 F.2d 1549, 1555 (11th Cir.1990). See Haynes v. W.C. Caye & Co., Inc., 52 F.3d 928, 930 (11th Cir.1995) (holding that statement questioning whether "sweet little old lady could get tough enough" to do job and statement that "a woman was not competent enough to do this job" constitute direct evidence); Burns v. Gadsden State Community College, 908 F.2d 1512, 1518 (11th Cir.1990) (holding that statement that "no woman would be named to a B scheduled job" constitutes direct evidence); Caban-Wheeler, 904 F.2d at 1555 (holding that defendant's statement that program needed a black director constitutes direct evidence);

7

E.E.O.C. v. Alton Packaging Corp., 901 F.2d 920, 923 (11th Cir.1990) (holding that general manager's statement that "if it was his company, he wouldn't hire any black people" and production manager's statement that "you people can't do a ---- thing right" constitute direct evidence); . . . ; Sennello v. Reserve Life Ins. Co., 872 F.2d 393, 394, 395 (11th Cir.1989) (holding that statement that "we can't have women in management" constitutes direct evidence); Walters v. City of Atlanta, 803 F.2d 1135, 1141-42 (11th Cir.1986) (holding that memorandum requesting a new list of candidates because "current register ... does not include any minority group representation" constitutes direct evidence); Wilson v. City of Aliceville, 779 F.2d 631, 633, 636 (11th Cir.1986) (holding that mayor's statement that "he wasn't gonna let no Federal government make him hire no god-dam nigger" constitutes direct evidence); Thompkins v. Morris Brown College, 752 F.2d 558, 561, 563 (11th Cir.1985) (holding that college president's statement that he saw no reason for a woman to have a second job and statement that males had families and needs that female plaintiff did not constitute direct evidence); Miles v. M.N.C. Corp., 750 F.2d 867, 874-75 (11th Cir.1985) (holding that plant manager's statement that he wouldn't hire blacks because "[h]alf of them weren't worth a shit" constitutes direct evidence); Bell v. Birmingham Linen Serv., 715 F.2d 1552, 1553, 1557 (11th Cir.1983) (holding that supervisor's statement that he would not put woman in washerman position because "every woman in the plant would want to go into the washroom" constitutes direct evidence); but see Harris, 99 F.3d at 1082, 1083 n. 2 (holding that statement that "under the circumstances we did not need to employ a black at Thompson High School" open to more than one interpretation and thus not direct evidence).

Id. at 1189-90 (finding direct evidence of retaliation sufficient to avoid summary judgment).

In addition to the cases cited by the Eleventh Circuit in Merritt, courts have identified evidence supporting a finding of discrimination in a variety of factual contexts. See Buckley v. Hosp. Corp. of Am., Inc., 758 F.2d 1525, 1530 (11th Cir. 1985) (finding evidence from which a reasonable jury could conclude that defendants acted with discriminatory intent in violation of the ADEA based in part on new hospital administrator's "expression of surprise at the longevity of the staff members, . . . indications that the hospital needed 'new blood' and that he intended to recruit younger doctors and nurses, and his comment on plaintiff's 'advanced age'" combined with the fact that "the two individuals who ultimately absorbed the bulk of her duties were more than 15 years her junior"). The Eleventh Circuit has considered relevant whether the comments in question specifically address or were made in the context of the challenged employment

8

action, as well as whether they were uttered by the decisionmaker(s). See Tran v. The Boeing Co., 190 Fed. Appx. 929 (11th Cir. 2006); Scott v. Suncoast Beverage Sales, Ltd., 295 F.3d 1223, 1227-28 (11th Cir. 2002) (per curiam); Standard v. ABEL Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998) (ADEA case holding that "remarks by non-decisionmakers or remarks unrelated to the decisionmaking process itself are not direct evidence of discrimination.").

Regarding pregnancy specifically, this Court has held that "[i]f a plaintiff can demonstrate that her termination was prompted by her pregnancy, then 'the ultimate issue of discrimination is proved.'" Ferrell v. Masland Carpets, Inc., 97 F. Supp. 2d 1114, 1122 (S.D. Ala. 2000) (Vollmer, J.) (quoting Bell v. Birmingham Linen Serv., 715 F.2d 1552, 1556 (11th Cir. 1983)) (where the "sole offer of direct evidence [wa]s Alvin Simmons's deposition testimony that he feared that an unborn child could become strangled by the umbilical cord if the mother raised her arms too high," which would "require the court to infer that [an employee's] belief in an old wives tale somehow motivated [another employee's] decision to terminate Ferrell," such could not be considered direct evidence, which "does not require such an inferential leap."). By way of example, the court in Ferrell pointed to EEOC v. Wal-Mart Stores, Inc., 156 F.3d 989 (9th Cir. 1998), in which the Ninth Circuit held that "a statement by an assistant store manager to a plaintiff that 'we won't be hiring you . . . because of the conditions of your pregnancy' and that '[y]ou're welcome back after you've had the baby,' is direct evidence of pregnancy discrimination." Ferrell, 97 F. Supp. 2d at 1123 (quoting Wal-Mart Stores, Inc., 156 F.3d at 990-92). By contrast, "a comment by a partner of a law firm to a plaintiff that 'if you were my wife, I would not want you working after having children,' does not constitute direct evidence of pregnancy discrimination concerning the firm's decision to

9

terminate the plaintiff after her pregnancy." Id. (quoting Kennedy v. Schoenberg, Fisher, & Newman, Ltd., 140 F.3d 716, 724 (7th Cir. 1998)).

Plaintiff presents sufficient direct evidence of discrimination to avoid summary judgment on her claim of discriminatory termination. Pugh had become manager of the Store during the week Plaintiff was out on medical leave. In her affidavit, Rivers describes a conversation between her and Pugh, occurring sometime between Pugh becoming manager and the morning Pugh allegedly found the store left open. Pugh stated that "she didn't think it was going to work that [Plaintiff] was pregnant[,] . . . that she couldn't have her go out on maternity leave[,] . . . and that she was going to have to get rid of [Plaintiff]." (Doc. 46-4 at 2). The day after Plaintiff returned to work, Pugh alleged that Plaintiff committed an offense against the company. Plaintiff disputes Pugh's allegations. This alleged misconduct resulted first in Plaintiff's suspension and ultimately in her termination, with Pugh, as the Store's manager, being directly involved in the decision to terminate.

Pugh's statements constitute direct evidence that Plaintiff's "termination was prompted by her pregnancy." See Ferrell, 97 F. Supp. 2d at 1122. They are precisely the type of "blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor, [that] constitute direct evidence of discrimination." Wilson, 376 F.3d at 1086; Rojas, 285 F.3d at 1342, n.2; Carter v. City of Miami, 870 F.2d at 582. See also Damon, 196 F.3d at 1359 ("An example of 'direct evidence would be a management memorandum saying, "Fire Earley--he is too old."'" (quoting Earley, 907 F.2d at 1082)). Pugh's statements to Rivers regarding Plaintiff's pregnancy are not "subject to more than one interpretation," see Harris v. Shelby Cnty. Bd. of Educ., 99 F.3d at 1083 n.2, and no reasonable factfinder could conclude "that the statement[s] w[ere] nothing more than [ ] observation[s] of a fact." Wilson,

376 F.3d at 1086. Indeed, they amount to "direct evidence of discrimination as evidence which reflects a discriminatory . . . attitude correlating to the discrimination" of which Plaintiff complains. See id. at 1086; Damon, 196 F.3d at 1357; Carter v. Three Springs Residential Treatment, 132 F.3d at 641; Caban-Wheeler v. Elsea, 904 F.2d 1549, 1555 (11th Cir. 1990). Moreover, Pugh's statements constitute direct evidence of discrimination because there is evidence that she was involved in the decision to terminate Plaintiff shortly after making them. See Bass v. Bd. of Cnty. Comm'rs, 256 F.3d 1095, 1105 (11th Cir. 2001) ("For statements of discriminatory intent to constitute direct evidence of discrimination, they must be made by a person involved in the challenged decision." (internal quotations omitted)), overruled on other grounds by Crawford v. Carroll, 529 F.3d 961, 971 (11th Cir. 2008); Ogletree v. City of Auburn, 619 F. Supp. 2d 1152, 1171 (M.D. Ala. 2009) ("[T]he '[d]isparate treatment analysis requires that none of the participants in the decision-making process be influenced by racial bias.'" (quoting Jones v. Gerwens, 874 F.2d 1534, 1541 n.13 (11th Cir. 1989)). Accordingly, summary judgment as to Plaintiff's claim of discriminatory termination is **DENIED**.

**V.     Conclusion**

For the reasons set forth above, it is **ORDERED** that Defendant's Motion for Summary Judgment (Doc. 40) is **DENIED**. It is also **ORDERED** that Section B of Defendant's Motion to Strike (Doc. 51 at 4-6) is **DENIED** as to the portion of Rivers' affidavit (Doc. 46-4) quoted above. The remainder of Defendant's Motion to Strike (Doc. 51) is **MOOT**.

**DONE** and **ORDERED** this the **4th** day of **May, 2011**.

/s/ Kristi K. DuBose
**KRISTI K. DUBOSE**
**UNITED STATES DISTRICT JUDGE**